**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

IN RE:                                : CHAPTER 13
                                      :
BRIAN M. WARRINGTON                   :
                    DEBTOR(S)         : BANKRUPTCY NO. 09-19816 SR

# OPINION

BY: STEPHEN RASLAVICH, CHIEF UNITED STATES BANKRUPTCY JUDGE.

*Introduction*

Before the Court is the Debtor's Motion for Turnover of Vehicle and For Counsel Fees for Violating the Automatic Stay. The Motion is directed at Citadel Federal Credit Union who opposes it. A hearing on the Motion was held on January 6, 2010, after which the Court granted limited relief and took the remaining issues under advisement. For the reasons which follow, the Debtor's Motion will be granted in part and denied in part.[1]

*Background*

There is no dispute as to the operative facts. They are: that in August 2006 the Debtor and another person purchased a 2001 Nissan Maxima; that Citadel provided the financing for that purchase; that Citadel is the present holder of the financing contract; that on or about September 30, 2009, the Debtor defaulted under the contract when he failed to make a monthly payment; that on December 8, 2009

---

[1]This matter is within the Court's "core" jurisdiction. *See* 28 U.S.C. § 157(b)(2)(E) (designating among "core" proceedings "orders to turn over property of the estate.")

Citadel repossessed the car; that on December 9 Citadel sent the Debtor a notice of repossession in accordance with Pennsylvania law; that the Debtor filed this bankruptcy case on December 22; and that on December 29, the Debtor filed the instant motion for turnover of the car and for attorneys fees. *See* Debtor's Motion, ¶¶ 2-5

At the hearing on January 6, the parties discussed the Debtor's legal rights in the vehicle after repossession and after a bankruptcy filing. It is the Debtor's position that because he has provided adequate protection of Citadel's interest in the car, it must be returned to him. Debtor's Motion, ¶ 8. Citadel contends that the Debtor is entitled to the return of the vehicle upon payment of the redemption amount as provided by applicable state law. That question would be taken under advisement but the Court afforded the parties interim relief: the parties submitted a stipulated order which provided (1) that Citadel would return the vehicle in exchange for one monthly payment and proof of insurance and (2) that the Debtor would continue to make monthly contract payments as adequate protection until confirmation. *See* Order of January 14, 2010.

*The Issues*

That left four questions for the Court to decide: first, must the Debtor's automobile which was repossessed prepetition be returned to him? Second, if it must, then what measure of adequate protection is Citadel entitled to? Third, does state law or federal bankruptcy law control as to how the Debtor may treat the secured lender in his Chapter 13 Plan? Fourth, is the Debtor entitled to recover attorneys fees on account of Citadel's conduct?

2

*Is the Repossessed Vehicle
Property of the Estate?*

Any discussion of property rights in a bankruptcy case must begin with § 541 of the Bankruptcy Code:

> The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a)(1)  The Third Circuit has "emphasized Congress' intent to delineate in broad terms what constitutes property of the estate." *See In re O'Dowd,* 233 F.3d 197, 202 (3d Cir.2000). Indeed, the legislative history states, "[i]t includes all kinds of property, including tangible or intangible property, causes of action ... and all other forms of property currently specified in section 70a of the Bankruptcy Act." *Id.* quoting H.R.Rep. No. 95-595, at 367 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6323. The intent of § 541 is to "move away from the 'complicated melange of references to State law' and to determine[ ] what is property of the estate by a simple reference to what interests in property the debtor has at the time of the commencement of the case." *Integrated Solutions, Inc. v. Service Support Specialties, Inc.,* 124 F.3d 487, 490-91 (3d Cir.1997) quoting H.R.Rep. No. 95-595 at 175, 1978 U.S.C.C.A.N. at 6136. Accordingly, with limited exceptions, the estate encompasses everything that the debtor owns upon filing a petition, as well as any derivative rights, such as property interests the estate acquires after the case commences. *See, e.g., United States v. Whiting Pools, Inc.,* 462

U.S. 198, 203-05, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983) (noting that scope of § 541(a)(1) is broad).

While federal law defines the limits of what is property of the estate, it is state law which determines a debtor's interest in particular property. *See Butner v. United States,* 440 U.S. 48, 54, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979); *Congress Talcott Corp. v. Gruber,* 993 F.2d 315, 319 (3d Cir.1993) (citing *Aquilino v. United States,* 363 U.S. 509, 513-514, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960)). Citadel relies principally upon *Butner* in arguing that the rights which the Debtor has in the vehicle are defined by the Pennsylvania Motor Vehicle Sales Finance Act[2] (MVSFA). Citadel's Brief, 2-4. That statute provides that upon repossession, a borrower may only redeem the car or surrender it.[3] From that, Citadel concludes, it is not required to return the car to the Debtor *before* the Debtor pays the redemption amount.

The Debtor sees Citadel's reliance on *Butner* as misplaced. The controlling authority on the question of whether a repossessed the car must returned, Debtor counters, is the Supreme Court's decision in *Whiting Pools, supra*. Debtor's Supplemental Brief, 1-2. This Court agrees and finds *Whiting Pools* to be instructive. That case involved a prepetition tax levy upon personal property. There, the IRS had seized property and remained in possession of it on the petition date. Like the state statute in the instant case, the tax code similarly provided a right of redemption to the

---

[2] 69 P.S. § 601 et seq.

[3] 69 P.S. § 625

4

taxpayer. Thus, the Supreme Court found that the IRS had no more than a lien on the seized property putting it in the same position as a private secured creditor. *Whiting Pools*, 462 U.S. at 210-211, 103 S.Ct. at 2316. The corollary to the finding, the High Court would conclude, is that the prepetition seizure did not transfer property to the IRS. *Id.* If that was the case, the Court went on, then the debtor may avail itself of the turnover provision which immediately follows § 541:

> As does all bankruptcy law, § 542(a) modifies the procedural rights available to creditors to protect and satisfy their liens... In effect § 542(a) grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of reorganization proceedings.

*Id.* 462 U.S. at 207-208.[4] Neither does the applicable non-bankruptcy law in this instance (the MVSFA) transfer title or ownership in the vehicle prior to sale. The MVSFA provides:

> Sale of motor vehicle after repossession
>
> A. When the repossessed motor vehicle under an installment sale contract is *not redeemed* by the buyer either by termination or reinstatement of the contract within the

---

[4]Although the High Court in *Whiting Pools* limited its ruling to Chapter 11 cases, numerous decisions have applied its rationale to Chapter 13 cases. *See e.g., Attinello v. Associates Commercial Corp. (In re Attinello)*, 38 B.R. 609, 611 (Bankr.E.D.Pa.1984); *In re Singer*, 368 B.R. 435, 439 n.12 (Bankr.E.D.Pa. 2007); *In re Reid*, 2010 WL 234832 at *5 n.9 (Bankr.E.D.Pa.); *In re Robinson*, 285 B.R. 732, 735 (Bankr.W.D.Okla.2002); *In re Sharon*, 234 B.R. 676, 681-82 (6th Cir. BAP 1999); *In re Spears*, 223 B.R. 159, 163 (Bankr.N.D.Ill.1998); *In re Richardson*, 135 B.R. 256, 257 (Bankr.E.D.Tex.1992); *Carr v. Security Savings & Loan Assn.*, 130 B.R. 434, 436 (D.N.J.1991); *Sutton v. Ford Motor Credit Co.*, 87 B.R. 46, 49 n. 1 (Bankr.S.D.Ohio 1988); *Robinson v. Ford Motor Credit Co.*, 36 B.R. 35, 38 (Bankr.E.D.Ark. 1983); *In re Yates*, 332 B.R. 1, 6-7 (10th Cir BAP 2005); *Mitchell v. BankIllinois (In re Mitchell)*, 316 B.R. 891, 896 (S.D.Tex. 2004); *Pileckas v. Marcucio (In re Marcucio)*, 156 BR. 721, 725 (N.D.N.Y. 1993). As both chapters of the Code seek the rehabilitation of the debtor, Debtors in both should be able to avail themselves of the powers necessary to achieve that aim.

> fifteen (15) day notice of redemption period, the *buyer shall forfeit all claim to such motor vehicle* and collateral security.

69 P.S. § 626A (emphasis added). Likewise, the contract provides that Citadel may sell the vehicle only after expiration of the redemption period:

> 15. SOME THINGS YOU SHOULD KNOW IF WE REPOSSESS THE VEHICLE: If we repossess without using a government official (by replevin):
>
> ...
>
> b. REDEMPTION: You have the right to buy back (redeem) the Vehicle within 15 days of the mailing of the Notice and at any later time before we sell the Vehicle. If you redeem the Vehicle, we will deliver the Vehicle to you at a place as provided by law, as soon as is reasonably possible, but in not more than ten (10) business days of our receipt of the funds required. *If you do not redeem, you give up all claim to the Vehicle.*
>
> c. *SALE: If you don't redeem we will sell the Vehicle.* The money received at sale will be used to pay costs and expenses you owe, and then to pay the amount you owe on the Contract.

Motor Vehicle Installment Contract, ¶ 15b,c (emphasis added). Because the 15 day redemption period was pending at the time of the bankruptcy, Citadel had not sold the vehicle. From this the Court must conclude that title to the vehicle remains with the Debtor. What necessarily follows is that the vehicle must be returned to his estate. *See In re Attinello*, 38 B.R. 609, 612 (Bankr.E.D.Pa.1984) (applying *Whiting Pools* to require turnover of repossessed tractor to Chapter 13 debtor); *In re Singer*, 368 B.R. 435, 439-440 (Bankr.E.D.Pa.2007) (concluding that holding in *Whiting Pools* makes prepetition repossessed vehicle property of the estate); *but see Haines v. GMAC (In re Haines)*, 10 B.R. 856, 859-860 (Bankr.E.D.Pa.1981) (finding that estate had no interest

in vehicle repossessed prepetition except for redemption); *accord Morgan v. GMAC (In re Morgan)*, 23 B.R. 700, 703 (Bankr.E.D.Pa. 1982) (estate's interest in vehicle terminated upon debtor's failure to exercise redemption right). *See* 7 Norton Bankr.L. & Prac. 3d § 143:18 (noting split of authority, observing that majority view is that the automobile, not any right of redemption, is part of the debtor's estate, and remarking that where there is intra-circuit conflict,[5] it is a function of varying state laws)  The Court recognizes that this ruling is at variance with an earlier decision it rendered involving—coincidentally—the same secured lender. *See In re Harrington*, Case No. 04-30028 SR (Bankr.E.D.Pa.2004, Oct. 27, 2004)  The explanation for this, simply put, is that the Court's reconsideration of applicable law has caused it to reach a different result.

*Return of Vehicle;*
*Adequate Protection*

Turnover of repossessed property, however is not unconditional. The *Whiting Pools* Court would add that "the Bankruptcy Code provides secured creditors various rights, including the right to adequate protection, and these rights replace the protection afforded by possession." 462 U.S. at 207; *Lee v. Schweiker*, 739 F.2d 870 877 n. 14 (3d Cir.1984) (observing the same); *In re Reid*, 2010 WL 234832 at *6 (Bankr.E.D.Pa.) (observing the same). Section 363 of the Code provides that "on

---

[5] In the Eleventh Circuit, cases have reached different outcomes depending on the state law involved. *Compare In re Lewis*, 137 F.3d 1280, 1285 (11th Cir. 1998) (holding that under Alabama law, repossessed vehicle *not* part of bankruptcy estate) and *In re Kalter*, 292 F.3d 1350, 1353 (11th Cir. 2002) (holding that under Florida, repossessed vehicle not part of bankruptcy estate) with *In re Rozier*, 376 F.3d 1323, 1324 (11th Cir. 2003) (holding that under Georgia law, repossessed vehicle *is* part of bankruptcy estate)

7

request of an entity that has an interest in property being used ... the court, .... shall prohibit or condition such use ... as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e).  As to certain secured obligations of Chapter 13 debtors, however, adequate protection must be furnished without a prior request:

### § 1326 Payments

(a)(1) Unless the court orders otherwise, the debtor shall commence making payments not later than 30 days after the date of the filing of the plan or the order for relief, whichever is earlier, in the amount–
...
(C) that provides adequate protection directly to a creditor holding an allowed claim secured by personal property to the extent the claim is attributable to the purchase of such property by the debtor for that portion of the obligation that becomes due after the order for relief, reducing the payments under subparagraph (A) by the amount so paid and providing the trustee with evidence of such payment, including the amount and date of payment.

11 U.S.C. § 1326(a)(1)(C).  As understood in this context, "adequate protection" must be determined for "that portion of the obligation that becomes due after the order for relief." *In re Singer, supra*, 368 B.R. at 443.  While the statute is silent as to how much will suffice to protect the lender, it is reasonable to assume that an amount which offsets depreciation would be satisfactory.  *Id.* citing *Drive Financial Services v. Brown (In re Brown)*, 348 B.R. 583, 594 (Bankr.N.D.Ga.2006); David Gray Carlson, *Cars and Homes in Chapter 13 After the 2005 Amendments to the Bankruptcy Code*, 14 Am. Bankr.Inst. L.Rev. 301, 325-26 (2006); *and United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 370, 108 S.Ct. 626, 630 (1988) (holding

that secured lender's entitlement to adequate protection means protection against depreciation of collateral)

Debtor has offered evidence in the form of Blue Book appraisals[6] of his vehicle. In January 2010, the same make and model of vehicle with comparable mileage was worth $6,565; depreciation is occurring at a rate of approximately $53 per month. *See* Debtor's Supplemental Certification, ¶¶ 5-9. Accordingly, this Court conditioned turnover of the vehicle on payment of one monthly contract payment and the Debtor's agreement to make monthly pre-confirmation payments in the same contract amount. *See* Order of January 14, 2010. That provides sufficient protection of Citadel's interest in the vehicle pending a determination of how the Debtor may treat Citadel's claim in his Chapter 13 plan.

*Chapter 13 Debtor's Rights*
*in Repossessed Property*

On the question of how Debtor's plan may deal with its claim, Citadel maintains that it is the state motor vehicle law which dictates what Debtor may do with it. Relying, once again, on *Butner, supra,* Citadel insists that the only right that the Debtor had upon filing the petition was the right to redeem the vehicle by payment in full of all amounts due. *See* Citadel Brief, 6. This would entail a one-time, lump sum payment.

---

[6] F.R.E. 803(17) recognizes the exception to hearsay rule regarding market reports. It is made applicable by B.R. 9017; *See In re Mama's Original Foods, Inc.,* 234 B.R. 500, 504 (Bankr.C.D. Cal. 1999)("The Kelly Blue Book establishes the market value for vehicles."); *State v. Erickstad*, 620 N.W.2d 136 (N.D. 2000) ("The Kelly Blue Book, as recognized used car price guide, falls within the exception to hearsay rule for market quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations."); *see also* Russell, *Bankruptcy Evidence Manual*, 2009 ed., § 803.30 (recognizing the exception).

*Id.* 3. Reinstatement, it goes on, is within the discretion of the holder of the contract—not the borrower—as expressly set forth under state law.[7] *Id.* 2.

Debtor points out that the *Butner* Court recognized the limits of applying non-bankruptcy law when determining a debtor's interest in property. While *Butner* stands for the general proposition that a debtor's property interests are determined by state law, "some federal interest [might] require a different result." 440 U.S. at 55. Moreover, the *Butner* Court recognized that "state laws to the extent that they conflict with the laws of Congress, enacted under its constitutional authority, on the subject of bankruptcies are suspended." *Id.* 54 n. 9. Therefore, the Debtor concludes that he is not limited to redemption of the vehicle but may treat this loan like any similar secured obligation in a Chapter 13 proceeding.

The Court is constrained to agree with the Debtor. The limits which the MVSFA places upon the borrower of a repossessed vehicle simply cannot be reconciled with the rehabilitative purpose of Chapter 13. Section 1322 of the Bankruptcy Code allows for more than one way for a plan to treat a secured claim such as Citadel's: the plan may modify the rights of holders of secured claims,[8] leave unaffected the rights of such claims or provide for the curing of any default as to such claim. *See* 11 U.S.C. § 1322(b)(2), (3). Nothing about repossession abridges these choices. *See Tidewater*

---

[7] 69 P.S. § 624

[8] This loan is subject neither to the anti-modification provision of § 1322(b)(2) (mortgage loans on a debtor's principal residence) nor the preclusion of auto loan bifurcation as provided in § 1325(a)(9), hanging paragraph. The latter provision applies to certain car loans made 2½ years prior to bankruptcy. This car loan was made in August 2006 which is more than 3 years prior to the filing of this bankruptcy case.

*Finance Company v. Moffett (In re Moffett)*, 356 F.3d 518, 523 (4th Cir.2004) ("Courts have recognized that the Bankruptcy Code permits debtors to restructure the timing of payments to secured creditors by de-accelerating debts in order to allow debtors to regain collateral necessary to their financial recuperation.")

Having determined that the Code affords the Debtor considerable flexibility in how it proposes to treat Citadel's claim, the Court turns to the question of whether what is proposed is in accordance with applicable provisions of the Bankruptcy Code. According to the plan, the Debtor is proposing to modify the loan: Citadel is to receive $200 per month for 60 months for a total of $12,000.[9] The Code allows the modification of a secured claim which pays the secured creditor the present value of its claim. *See* 11 U.S.C. § 1325(a)(5)(B). If Citadel believes that the amount proposed to be paid is less than the present value of its claim, then it may object to confirmation of this plan. Confirmation, however, is not before the Court at this time. All that Citadel is entitled to until confirmation is adequate protection of its claim.

*Debtor's Demand*
*For Counsel Fees*

In his motion, the Debtor requests an award of attorney's fees on account of what it considers a violation of the automatic stay on the part of Citadel. While there is

---

[9] The Debtor's supplemental brief characterizes the treatment as "cure and reinstatement" but this inconsistent with what that term connotes. "Cure" of a delinquent contract suggests making the lender whole by paying arrearages and other costs and fees provided for under the instrument. "Reinstatement" refers to the resumption of the regular payments in the contract amount. *See In re Ryker*, 2007 WL 2138590 at *3 n. 5 (3d Cir.) (observing that the Bankruptcy Code does not define the word "cure," but, the term assumes a reinstatement of the defaulted contract in accordance with the terms of the instrument) That is not what the Debtor is proposing in his plan.

11

no dispute that Citadel retained the car after receiving notice of the Debtor's bankruptcy filing, its actions were predicated upon a decision of this Court which clearly allowed such conduct. Under such circumstances, any imposition of sanctions would be most inappropriate.

*Summary*

The Debtor's Motion for Turnover is supported by the record. While he is entitled to the return of the vehicle, the Debtor was rightly required to furnish adequate protection of Citadel's interest in it pending confirmation. His proposed treatment of Citadel's claim will not be limited by non-bankruptcy law. Finally, Citadel's conduct does not justify an award of attorneys fees.

An appropriate Order follows.

By the Court:

_____
Stephen Raslavich
Chief U.S. Bankruptcy Judge

Dated: <u>February 23, 2010</u>